**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FORD OLINGER<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, GREAT LAKES NAVAL AIR STATION, and MEGAN STADLMAN,<br><br>Defendants. | Case No. 1:25-cv-05062<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ford Olinger ("Plaintiff"), a golf professional, brought this action in against his employer, the United States Department of the Navy ("Navy") and Great Lakes Naval Air Station,[1] and his supervisor, Megan Stadlman (collectively "Defendants"), alleging that Defendants retaliated against him and he is owed overtime under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). The Court previously ruled that it does not have jurisdiction over Plaintiff's FLSA claims against the Navy and Naval Station Great Lakes pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1). [21]. Now before the Court is Plaintiff's motions for reconsideration of that order and for leave to amend his complaint [25] [53], and Defendants' motion to dismiss [29]. For the reasons stated

[1] The parties refer to "Great Lakes Naval Station," "Great Lakes Naval Air Station," "Great Lakes Naval Air State," and "Naval Station Great Lakes" interchangeably. The site's official name appears to be "Naval Station Great Lakes," so the Court employs that nomenclature throughout.

herein, Defendants' motion to dismiss [29] is granted and Plaintiff's motions for reconsideration and for leave to amend his complaint [25] [53] are denied.

## BACKGROUND[2]

Defendants hired Plaintiff to serve as Defendants' Golf Operations Manager for the Veterans Memorial Golf Course at Naval Station Great Lakes in January 2023. [1] ¶ 11. Pursuant to his contract, Plaintiff was to be paid $35.00 per hour for forty hours of work each week. *Id.* at ¶ 1. He then took over the duties of Golf Course Superintendent in March of 2023. *Id.* at ¶ 14. Due to Plaintiff's increased responsibilities, he was given a five percent pay increase (to $36.75 per hour) in June of 2023, retroactive to March. *Id.* at ¶¶ 1, 17. According to the Complaint, between January and August of 2023, Plaintiff worked in excess of one hundred hours per week eighteen times. *Id.* at ¶¶ 24–25. Despite the high number of hours worked, Defendant Stadlman, Plaintiff's supervisor, refused to submit the correct number of hours Plaintiff worked to payroll, and instead logged him as having worked only forty hours each week. *Id.* at ¶¶ 23, 28. Olinger was paid $2,042.88 per pay cycle prior to his raise, $2,132.67 following his raise. *Id.* at ¶ 26. However, he should have received additional overtime pay of $6,877.50 for January and February (reflecting an overtime rate of $52.50), and $98,122.50 for March through August (reflecting an overtime rate of $55.13)—$105,000 total. *Id.* at ¶ 28.

---

[2] The following factual allegations taken from the Complaint [1] are accepted as true for the purposes of Defendants' motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1191 (7th Cir. 2021).

Plaintiff first noticed he was not being paid for all the hours he worked in the Spring of 2023. *Id.* at ¶ 3. He alleges that he complained verbally at first, followed by submitting written complaints starting in April. *Id.* On August 24, 2023, he wrote to Defendant Stadlman to request overtime pay for his hours worked. He was terminated less than a week later, on August 30, 2023. *Id.*

Plaintiff alleges that Defendants failed to pay him for all hours worked and the requisite overtime premiums in violation of the FLSA (29 U.S.C. § 201) (Count I) and IMWA (820 ILCS 105/1) (Count II), and retaliated against him in violation of the FLSA (29 U.S.C. § 215(a)(3)) (Count III) and IMWA (820 ILCS 105/11(c)) (Count IV).[3] He seeks all unpaid wages, overtime, and benefits, interest, attorneys' fees and costs, statutory damages, and damages for emotional distress, damage to his professional reputation, and reinstatement or front pay.

**PROCEDURAL HISTORY**

The Court assumes familiarity with its orders to date. However, it is necessary to briefly outline the case history to date.

Plaintiff filed this case on May 7, 2025. *See.* [1]. In August of 2025, counsel for Defendants appeared [10], and shortly thereafter filed a Request for Determination of Jurisdiction. [11]. Defendants argued that the Court has jurisdiction over Plaintiff's FLSA claims against the United States under *United States v. Bormes*, 568

---

[3] The extent the specific counts are impacted by Plaintiff's motions for leave to amend is discussed in detail below.

U.S. 6 (2012). *Id.* Plaintiff agreed with the Government that this Court had jurisdiction over his FLSA claims against the United States. [17]. On April 8, 2026, the Court determined that it lacked subject matter jurisdiction over Plaintiff's FLSA claims against the United States because the Tucker Act gives the U.S. Court of Federal Claims exclusive jurisdiction over non-tort claims against the United States. *Olinger v. U.S. Dep't of the Navy*, 2026 WL 949033, at *2 (N.D. Ill. Apr. 6, 2026). The Court further found that transfer of these claims to the Court of Federal Claims would be futile under 28 U.S.C. § 1500 because that court has no jurisdiction while Plaintiff's remaining claims, which arise from the same operative facts, remain pending. *Id.* Therefore, the Court dismissed Plaintiff's FLSA claims against the United States without prejudice. *Id.* at *3.

On May 6, 2026, Plaintiff moved for leave to file a First Amended Complaint ("FAC") and to alter or amend the judgment under Rule 59(e). [25]. The FAC dismissed Plaintiff's FLSA and IMWL overtime claims against all Defendants (formerly Counts I and II), retained his FLSA retaliation claim against all Defendants (formerly Count III), and dismissed his IMWL retaliation claim against the United States but not Defendant Stadlman (formerly Count IV). [25-1]. Plaintiff argued that these changes remove the § 1500 impediment to transferring the dismissed FLSA overtime claims to the Court of Federal Claims, and requested the Court to alter its April 8, 2026 order to direct transfer of these claims rather than dismissal because the statute of limitations barred him from filing these claims anew in the Court of Federal Claims. [25] at 7–8. This motion remains pending.

Throughout this period, Plaintiff struggled to serve process on Defendants. Under Rule 4, the original deadline to serve Defendants was August 5, 2025. Plaintiff apparently attempted to serve Defendants on July 18, 2025 [30], but as Defendants indicated to Plaintiff's counsel at the time, this attempt was procedurally deficient. Defendants ultimately agreed to extend the deadline for service to January 31, 2026. [15]. When Plaintiff failed to meet that deadline, the Court ordered service to occur by May 22, 2026. [24]. On May 19, 2026, Plaintiff attempted service at the address of the U.S. Attorney's Office, but this was again defective. [26] [27] [28]. Plaintiff separately attempted to serve Defendant Stadlman on May 25 and 26 through certified mail but these were also defective.

Defendants filed a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) on June 4, 2026, arguing that Plaintiff had failed to serve any Defendant because: (1) the Attorney General and Navy were never served, (2) service to the U.S. Attorney at various points either did not contain the complaint or the summons, or the summons was defective; and (3) service on Stadlman by mail was not proper. [29]. Defendants also moved to dismiss Plaintiff's retaliation claim against Defendant Stadlman under the IMWL (Count IV) for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). *Id.*

Following the filing of Defendant's motion to dismiss, Plaintiff filed a notice that he had served the Attorney General on June 3, 2026. [54] at 2. On June 10, 2026, Plaintiff attempted to serve Stadlman at home, which Defendants argue was defective. *Id.* at 4; [44]. Then, on June 22, 2026, Plaintiff attempted to serve the Great

Lakes Naval Air Station, which was defective under 32 C.F.R. § 257.5(c). [50] [51]. On July 14, 2026, Plaintiff attempted to serve the Navy via the U.S. Attorney General. [55].

On July 17, 2026 Plaintiff moved for leave to file a Second Amended Complaint ("SAC") and to alter or amend the judgment under Rule 59(e). [53]. Plaintiff did not seek an additional extension of time to serve Defendants. The SAC seeks to retain Plaintiff's FLSA overtime claim against the Navy (formerly Count I) and requests the Court to transfer that claim to the Court of Claims for disposition, dismisses Plaintiff's IMWL overtime and retaliation claims against all Defendants (formerly Counts II and IV), and seeks to retain his FLSA retaliation claim against the Navy and Stadlman (formerly Count III) for disposition by this Court. [53-1]. Plaintiff again argues that these changes remove the § 1500 impediment to transferring his FLSA overtime claim to the Court of Federal Claims, this time because Plaintiff's FLSA overtime claim against the Navy is factually distinct from his FLSA retaliation claim. [53] at 4–6.

**STANDARD**

After filing a lawsuit, the plaintiff must serve a copy of the complaint and a summons on each defendant within ninety days. Fed. R. Civ. P. 4(c)(1), (m). To effectively serve a U.S. government agency, a summons and a copy of the complaint must be served on three entities: the United States through the U.S. Attorney's Office, the Attorney General of the United States, *and* the specific agency at issue. Fed. R. Civ. P. 4(i)(1), (3). The Navy may be served via its General Counsel in

Washington, D.C. 32 C.F.R. § 257.5(c). Similarly, service on a United States employee sued in their individual capacity requires service on the U.S. Attorney's Office, the Attorney General, *and* the individual employee. Fed. R. Civ. P. 4(i)(1), (3). Individuals in these circumstances may be served pursuant to state law, or by delivering the summons and complaint to the person, leaving a copy at their home with a person of suitable age and discretion who resides there, or delivering a copy to their authorized agent. Fed. R. Civ. P. 4(e).

If service is not effected on each entity required by Rule 4(i) within ninety days, but one of these entities has been served, the court must allow the party a reasonable time to cure its failure. Fed. R. Civ. P. 4(i)(4). If they fail to do so, the court must dismiss the action without prejudice unless the plaintiff shows good cause for the failure. Fed. R. Civ. P. 4(m). When a defendant challenges the sufficiency of service, the burden is on the plaintiff to affirmatively demonstrate good cause. *Champan v. U.S. Marshal for N. Dist. of Ill.*, 584 F. Supp. 2d 1083, 1090 (N.D. Ill. 2008). The determination of whether good cause exists is entrusted to the district court's discretion. *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383–84 (7th Cir. 1998); *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011). "Simple attorney neglect, without the presence of substantial extenuating factors such as sudden illness or natural disaster, cannot constitute the sole basis for a 'good cause' determination." *Floyd v. United States*, 900 F.2d 1045, 1047 (7th Cir. 1990). If a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service, considering factors like: (1) a statute of limitations

bar; (2) prejudice to the defendant; (3) actual notice of the lawsuit; and (4) eventual service. *Troxell*, 160 F.3d at 383. The Court may consider affidavits and other documentary evidence in making that determination. *Mich. Motor Techs., LLC v. Bayerische Motoren Werke AG*, 683 F. Supp. 3d 811, 819 (N.D. Ill. 2023); *United States v. Park*, 389 F. Supp. 3d 561, 567 (N.D. Ill. 2019).

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend pleadings "when justice so requires." *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021) (Rule 15(a)(2) take a "liberal approach to granting leave to amend") (quotation omitted). But leave to amend "is not an absolute right." *Ewing v. 1645 W. Farragut, LLC*, 2018 WL 11276811, at *1 (N.D. Ill. Nov. 9, 2018) (citations omitted), *aff'd*, 90 F.4th 876 (7th Cir. 2024). District courts have broad discretion to deny leave to amend where there is "undue delay, bad faith, dilatory motive, or undue prejudice to the non-moving party, where the movant has repeatedly failed to cure prior deficiencies, or where the proposed amendment is futile." *Id.* (citing *Villa v. City of Chi.*, 924 F.2d 629, 632 (7th Cir. 1991)). Amendment is futile if a plaintiff's claims should be dismissed for improper service, which cannot be cured by further amendment of a complaint. *Maranga v. Abdulmutallab*, 903 F. Supp. 2d 270, 273 (S.D.N.Y. 2012); *Bruson-Bedi v. New York*, 2018 WL 2084171, at *2 (S.D.N.Y. May 1, 2018) (collecting cases).

## ANALYSIS

Critical to the success of Plaintiff's motions for leave to amend is the Court's decision on Defendants' motion to dismiss. If granting of Defendants' motion would render amendment futile, Plaintiff's motions should be denied. Therefore, the Court first addresses Defendants' motion to dismiss.

### I. Defendants' Motion to Dismiss Under Rule 12(b)(5)

Plaintiff's failure to meet the deadline to serve Defendants under Rule 4(m) is well documented, as is the Court's ultimate grant of an extension of time to do so to May 22, 2026. Plaintiff's initial attempt in the summer of 2025, as well as his more recent attempts throughout the summer of 2026, failed. Plaintiff has not shown good cause for these failures, and the Court declines to use its discretion to extend to Plaintiff yet another extension. Enough is enough. This case is dismissed under Rule 12(b)(5).

#### A. Plaintiff's Attempts at Service

No Defendants have been served to date. Plaintiff first attempted service on the U.S. Attorney's Office in June 2025, but he failed to include the operative complaint, rendering service incomplete. At that time, he did not even attempt service on the U.S. Attorney General, the Navy, or Stadlman, as required under Rule 4(i). Defense counsel timely raised these issues with Plaintiff in a letter dated September 4, 2025, explaining which entities were required to be served under Rule 4(i), and offering instructions on doing so such as providing the address where the General Counsel of the Navy should be served under 32 C.F.R. § 257.5(c). Plaintiff was also

apprised of the ineffective service in Defendants' September 16, 2025 request for an extension of time to respond to the complaint. [12]. Defendants ultimately agreed to extend the deadline for service to January 31, 2026. [15]. When Plaintiff did not meet that deadline, Defendants again raised the ineffective service with Plaintiff's counsel on April 22, 2026, nearly a year after the case was filed, and indicated that if service did not occur within thirty days Defendants would file a motion to dismiss for lack of service under Rule 12(b)(5). *See* [30] at 3. At an April 29, 2026 status conference, the Court ordered service to occur by May 22, 2026. [24].

On May 19, 2026, Plaintiff again attempted service on the Navy, Naval Station Great Lakes, and Defendant Stadlman at the address of the U.S. Attorney's Office. But this service was also defective as the U.S. Attorney was not served with a copy of the complaint, the summons were not signed by the clerk of court and did not include the court's seal, and the proof of service forms were not filled out. [26] [27] [28]. Plaintiff again did not attempt to serve the General Counsel for the Navy or U.S. Attorney General, as required under Rule 4(i). Plaintiff separately attempted to serve Defendant Stadlman via a process server on May 25, 2026 (three days after the Court's deadline), but the summons was not accompanied by the complaint or a proof of service. [30] at 27–33. Plaintiff tried again the following day by certified mail, this time including a copy of the complaint but the proof of service was left blank. *Id.*; [49]. *And* service by mail, even certified mail, is not permitted under the Federal Rules or under Illinois law. Fed. R. Civ. P. 4(e); 735 ILCS 5/2-203; *Thompson v. Brown*, 2020

WL 6149580, at *1–2 (N.D. Ill. Oct. 20, 2020) (finding service improper where individual defendants were served through certified mail).

Plaintiff finally served the Attorney General on June 3, 2026 (and, apparently, on July 14, 2026, after submitting his response brief). [55]. But Stadlman and the Navy have still not been effectively served. On June 10, 2026, Plaintiff attempted to serve Stadlman at home, and according to the affidavit of service the summons was left with an individual who does not match Stadlman's physical description. [46]. Neither party confirms if that individual was of suitable age or discretion or resides there as required by Rule 4(e)(2)(B) and Illinois law. Then, on June 22, 2026, Plaintiff attempted to serve Naval Station Great Lakes at an address in Great Lakes, Illinois, and the Navy at the offices of the Navy Judge Advocate General in Washington, D.C. (not the offices of the Navy's General Counsel). [52-3] [52-4]. Neither of these addresses is the proper location for service on the Navy under 32 C.F.R. § 257.5(c) and which Defendants first provided to Plaintiff's counsel ten months earlier. To date, according to the docket, the General Counsel of the Navy has still not been served.

**B. Good Cause**

In light of this history, there is no good cause to explain Plaintiff's neglect of his duty to serve Defendants. As called for by Rule 4(i) and (m), the Court has already offered a series of generous extensions for Plaintiff's counsel to achieve service. They have been on notice of their failure to effectuate service on Defendants since at least September 2025, and Defense counsel has not only frequently reminded Plaintiff of this outstanding issue but has also gone out of their way to assist by providing the

proper locations to serve Defendants. *Tuke v. United States*, 76 F.3d 155, 157–58 (7th Cir. 1996) (plaintiff's seventeen-day-long delay in attempting service again after being informed by opposing counsel that he had not met the requirements of Rule 4(i) was "[n]ot by any stretch of the imagine . . . 'reasonable'"). Plaintiff offers no explanation other than the neglect of his attorneys to properly supervise his case while their attention was focused on other clients, and the difficulty in parsing Rule 4. [52] at 2 n.1, 4. The Seventh Circuit is clear that "[s]imple attorney neglect, without the presence of substantial extenuating factors such as sudden illness or natural disaster, cannot constitute the sole basis for a 'good cause' determination." *Floyd*, 900 F.2d at 1047. And Rule 4(i) "is direct and clear; it is hard to imagine how it could be misunderstood." *Tuke*, 76 F.3d at 157. Absent any other explanation, Plaintiff has failed to meet his burden to show good cause.

Absent good cause, the Court declines to use its discretion to grant an additional extension. While two of the factors commonly considered at this juncture point towards granting Plaintiff additional time—the statute of limitations may bar refiling of these claims and Defendants were on notice of this lawsuit early on, as evidenced by their engagement on the jurisdictional issue—the extremity of the circumstances at hand tips the balance towards Defendants. Contrary to Plaintiff's arguments, eighteen months into litigating this case no Defendants have been properly served. Indeed, after initial attempts in July 2025, Plaintiff's counsel did not again try to serve Defendants until May 2026, nearly ten months later, despite being

on notice of this issue since at least September 2025.[4] Plaintiff's June 10, 2026 attempt to serve Defendant Stadlman fell after the Court's May 22 deadline, and the person apparently served at her home rebuts the presumption of service. *Wells Fargo Bank, N.A. v. Wiliams-Pittman*, 2013 WL 1003595, at *2 (N.D. Ill. Mar. 12, 2013) (the differences between defendant's appearance and the appearance described as served by the process server rebuts the presumption of service). While the Attorney General was finally served on June 3, 2026 and July 14, 2026—both well after the Court's May 22, 2026 deadline—Olinger has still not served the General Counsel of the Navy, the actual defendant. His last attempts include trying to serve the Navy at an address in Great Lakes, Illinois [52-3] and at the office of the Navy Judge Advocate General in Washington, D.C. [52-4] but neither of these are the proper address for service expressly outlined in 32 C.F.R. § 257.5(c)—an address defense counsel provided to Plaintiff over a year ago.

In light of the above circumstances, Rule 12(b)(5) warrants dismissal. The Complaint is dismissed. Because the complaint is dismissed under Rule 12(b)(5), the Court does not reach the question of whether Plaintiff has stated a claim under Rule 12(b)(1) and (6).

---

[4] Contrary to Plaintiff's assertion, the government shutdown between October 1 and November 12, 2025 had no bearing on Plaintiff's efforts to serve process.

## II. Plaintiff's Motions for Leave to Amend & for Reconsideration

Notwithstanding Defendants' Motion to Dismiss, Plaintiff has also moved for leave to amend his Complaint under Rule 15(a), and for the Court to reconsider its ruling dismissing Plaintiff's FLSA overtime claim as opposed to transferring it to the Court of Federal Claims under Rule 59(e). Given that this case is dismissed for insufficient service of process under Rule 12(b)(5), any amendment to the Complaint would not cure this deficiency and would be futile. *Maranga*, 903 F. Supp. 2d at 273; *Bruson-Bedi*, 2018 WL 2084171, at *2 (collecting cases). Plaintiff's motions for leave to amend are denied.

The Court also declines to reconsider its decision declining to transfer Plaintiff's FLSA overtime claim against the Navy to the Court of Federal Claims. Given that the complaint is dismissed, there is nothing to transfer, and the Court declines to reach Plaintiff's arguments under 28 U.S.C. § 1500. Furthermore, denying Plaintiff's request will not result in manifest injustice.[5] The Seventh Circuit has ruled that the "interests of justice will not be disserved by denying [] transfer" to the Court of Federal Claims where the case is dismissed based on improper service of process. *Roberts v. U.S. Dep't of Agric.*, 91 F.3d 146 (table), 1996 WL 403014, at *1 (7th Cir. July 16, 1996) (affirming dismissal based on improper service and decision not to

[5] Plaintiff argues that the Court should permit transfer because the statute of limitations bars him from refiling his claims in the proper forum. Other courts have declined to transfer cases to the Court of Federal Claims when that court would refuse to exercise jurisdiction based on the statute of limitations. *Boston v. United States*, 2008 WL 4822018, at *3 (C.D. Ill. Oct. 29, 2008); *Terry v. Tabar*, 2025 WL 1319177, at *9 (D. Hawaii Apr. 25, 2025).

transfer case to Court of Federal Claims). This is especially true where the court gave the plaintiff extra time to effect proper service and Plaintiff was given "clear[] instruct[ions]" on how to do so. *Id.* at *1 n.2. Plaintiff's motion for reconsideration is denied.

## CONCLUSION

In light of the egregious extent of Plaintiff's failure to effectuate service, Defendants' motion to dismiss [29] is granted. Plaintiff's motions for leave to amend and for reconsideration [25] [53] are denied. The complaint is dismissed. Judgment to enter. Civil case terminated.

E N T E R:

Dated: November 17, 2026

MARY M. ROWLAND
United States District Judge